UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

PAYLESS SHOESOURCE (PANAMA), S.A., )
)
      Plaintiff, )
)
vs. ) Case No. 5:21-cv-4033
)
BEAZLEY INSURANCE COMPANY, INC., )
)
      Defendant. )
)

## COMPLAINT

Plaintiff, Payless Shoesource (Panama), S.A. ("Payless"), sues Beazley Insurance Company, Inc. ("Beazley") for breach of contract and in support alleges:

## NATURE OF ACTION

1. This is an action for breach of contract arising out of Beazley's failure to pay amounts owed to Payless under the crime insurance policy Beazley issued to Payless in Topeka, Kansas for loss Payless incurred when it transferred money based on fraudulent invoices and fraudulent payment instructions made by third parties.

## PARTIES, JURISDICTION AND VENUE

2. Payless Shoesource (Panama), S.A. is a foreign corporation incorporated and existing under the laws of the Republic of Panama with its principal place of business located in Panama City, Panama.

3. Upon informed belief, Defendant Beazley is a corporation incorporated and existing under the laws of the State of Connecticut with its principal place of business located in Farmington, Connecticut. Beazley is an insurance company authorized by the Kansas Department of Insurance to issue insurance policies in Kansas.

4. This Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(2) as complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000 exclusive of interest, attorneys' fees and costs.

5. Venue is proper in this district because the insurance policy at issue was issued to Payless in this district, where Plaintiff's parent company, Payless LLC is incorporated and holds its principal place of business, Beazley actively conducts business in this district, and a substantial part of the acts and omissions giving rise to this dispute between the parties occurred in this district.

## BACKGROUND

### I.  THE POLICY

6. Beazley issued a crime insurance policy bearing policy number V2417D180101 to Payless, Inc. in Topeka, Kansas, insuring Payless, Inc. and its subsidiaries, including Plaintiff, against, among other things, fraudulent instruction coverage, computer fraud and "funds transfer fraud" coverage, and forgery and alteration coverage for the August 10, 2018 to August 10, 2019 policy period (the "Policy"). A copy of the Policy is attached as **Exhibit A**.

7. **Fraudulent Instruction Coverage**: The Policy's Fraudulent Instruction Coverage obligates Beazley to "indemnify [Payless] for loss resulting directly from an **Insured** having transferred, paid, or delivered any **Money** or **Securities** as a direct result of **Fraudulent Instructions** provided by a person purporting to be a **Vendor**, **Client**, or an **Authorized Employee**." **Ex. A**, Policy at Endorsement Form No. E06802 at ¶ 1.

8. The Policy's Fraudulent Instruction Coverage is subject to a $5,000,000.00 per-loss limit of liability and $100,000.00 per-loss deductible. *Id.* at ¶ 6.

9. Under the Policy, "[a]ll losses arising out of or resulting from the same **Fraudulent Instruction**, multiple or a series of **Fraudulent Instructions** purporting to be from the same

**Vendor**, **Client**, or **Authorized Employees** … shall be deemed a single loss under th[e] Policy subject to the each loss limit set forth in Section 6 of" the Fraudulent Instruction Coverage endorsement. *Id.* at ¶ 4.

10. The Policy defines "**Insured**" to mean Payless, Inc. "and/or any additional **Insureds** listed therein and any **Subsidiary**." "**Subsidiary**" is defined to mean "any entity, while more than 50% of the outstanding voting securities representing the right to vote for the election of such entity's directors or the right to elect or otherwise designate more than 50% of such entity's managers is owned or controlled by the **Insured** directly or indirectly, if such entity: (1) was owned prior to the inception date of this Policy and was insured under a policy issued by the insurer of which this Policy is a renewal; (2) was owned on the inception date of this Policy; [or] (3) become so owned after the inception date of this Policy pursuant to Clause VII.B.1." *Id.* at Section II – Definitions ¶¶ Q, BB. "**Subsidiary**" is also defined to include "participation in a Joint Venture, but only to the extent of the **Insured's** ownership interest, unless (1) the **Insured** has the largest ownership of any Joint Venture partner;" (2) "[t]he **Insured** is contractually obligated to manage and supervise the operation;" and (3) "[t]he **Insured**'s policies and procedures are established and adhered to for operation of the Joint Venture." *Id.* at Endorsement Form No. E03396.

11. Plaintiff is an "**Insured**" under the Policy.

12. The Policy defines "**Fraudulent Instructions**" to mean "a fraudulent written instruction, electronic instruction (including email or web-based instruction) or telephone instruction that is intended to mislead an **Insured** through the misrepresentation of a material fact that is relied upon in good faith by such **Insured**." **Ex. A**, Policy at Endorsement Form No. E06802 at ¶ 2.

13. The Policy defines "**Authorized Employee**" to mean "an employee who is authorized by the **Insured** to transfer **Money** or **Securities** or to instruct other **Employees** to transfer **Money** or **Securities**." *Id.*

14. **Computer Fraud and Funds Transfer Fraud Coverage**: The Policy's Computer Fraud and Funds Transfer Fraud Coverage obligates Beazley to "indemnify [Payless] for: (1) loss of or damage to **Money**, **Securities** or **Property** resulting directly from **Computer Fraud** committed solely by a **Third Party**; or (2) loss of **Money** or **Securities** contained in a **Transfer Account** at a **Financial Institution** resulting directly from **Funds Transfer Fraud** committed solely by a **Third Party**." **Ex. A**, Policy at Section I – Insuring Clauses ¶ F.

15. The Policy defines "**Computer Fraud**" to mean "the **Theft** of **Money**, **Securities**, or **Merchandise** by a **Third Party**, through the use of any **Computer System**." *Id.* at Section II – Definitions ¶ C.

16. The Policy defines "**Theft**" to mean "any act of stealing." *Id.* at ¶ CC.

17. The Policy defines "**Third Party**" to mean "any person or entity other than an **Insured**, **Employee** or **Executive Shareholder**." *Id.* at ¶ DD.

18. The Policy defines "**Computer System**" to mean "a computer or computer network including input, output, processing, storage and communication facilities and shall include off-line media libraries." *Id.* at ¶ D.

19. The Policy defines "**Funds Transfer Fraud**" to mean "fraudulent written, electronic, telegraphic, cable, teletype or telephone instructions by a **Third Party** issued to a **Financial Institution** directing such institution to transfer, pay or deliver **Money** or **Securities** from any account maintained by an **Insured** at such institution, without the **Insured's** knowledge or consent." *Id.* at ¶ P.

20. The Policy defines "**Transfer Account**" to mean an account maintained by the **Insured** at a **Financial Institution** from which the **Insured** can initiate the transfer, payment or delivery of **Money** or **Securities**." *Id.* at ¶ EE.

21. The Policy defines "**Financial Institution**" to include "a bank, credit union, saving and loan association, trust company or other licensed financial service where the **Insured** maintains a **Transfer Account**." *Id.* at ¶ N.

22. The Policy's Computer Fraud and Funds Transfer Fraud Coverage is subject to a $10,000,000.00 per-loss limit of liability and $250,000.00 per-loss deductible.

23. **Forgery or Alteration Coverage**: The Policy's Forgery and Alteration coverage obligates Beazley to "indemnify [Payless] for loss resulting directly from **Forgery** or alteration by a **Third Party** of any … orders or directions to pay a sum certain in **Money** that are: (1) made or drawn by or upon the **Insured** or that are purported to have been so made or drawn; or (2) made or drawn by one acting as the **Insured's** agent or that are purported to have been so made or drawn." **Ex. A**, Policy at Section I – Insuring Clauses ¶ B.

24. The Policy defines "**Forgery**" to mean "the signing of another natural person or entity's name with intent to deceive, but does not mean a signature that includes one's own name, with or without authority, in any capacity for any purpose." *Id.* at Section II – Definitions ¶ O. The Policy further states that "[m]echanically or electronically produced or reproduced signatures shall be treated the same as hand-written signatures." *Id.*

25. The Policy's Forgery and Alteration Coverage is subject to a $10,000,000.00 per-loss limit of liability and $250,000.00 per-loss deductible.

II. THE FRAUDULENT INSTRUCTIONS AND RESULTING LOSS

26. On March 5, 2019, third parties gained unauthorized access to the email account of

Payless' Director of Income Tax, David Diedel.

27. The third parties created a series of falsified invoices purporting to be from vendors Binzhi Import and Export Co. Ltd. and its subsidiary Ming Chuen Sheng Trading Co.

28. Using the compromised email account and the falsified invoices, the attackers, purporting to be Mr. Diedel and Payless' Chief Financial Officer, Mario Zarazua, provided a series of fraudulent wire instructions to Payless' accounts payable department, causing Payless to transfer, pay and deliver money to a bank account at Bank of China HK, Ltd. in Hong Kong, China via four separate wire transfers on March 8, 2019, March 11, 2019, March 15, 2019, and March 18, 2019.

29. Each email conveying the fraudulent instructions included Mr. Diedel and Mr. Zarazua's standard email signatures, which Payless' accounts payable representative verified prior to initiating the transactions at issue.

30. The March 11, 2019 wire transfer was rejected by the receiving bank, but, per additional fraudulent instructions provided by the third parties impersonating Mr. Diedel and Mr. Zarazua, successfully re-issued on March 18, 2020.

31. The successful wire transfers totaled $1,268,750.00, broken down by date and payee as follows (the "Loss"):

| Payment Date | Invoice No. | Amount | "Vendor" Recipient |
| --- | --- | --- | --- |
| March 8, 2019 | 131708 | $393,750.00 | Ming Chuen Sheng Trading Co. |
| March 11, 2019 | 2019ADM2 | $656,250.00 (rejected by receiving bank) | Binzhi Import and Export Co. Ltd. |
| March 15, 2019 | 131708-2 | $218,750.00 | Ming Chuen Sheng Trading Co. |
| March 18, 2019 | 2019-ADM2-1 | $656,250.00 | Ming Chuen Sheng Trading Co. |

32. On March 20, 2019, Payless' Controller received another email from David Diedel attaching a fourth invoice and an instruction to pay the invoice in full.

33. On March 20, 2019, Payless' Controller responded that Payless' cash flow would be "considerably affected" by the transfer and immediately began to further investigate whether the instructions were legitimate.

34. That same day, Payless' controller discovered that the invoices and transfer instructions were fraudulent.

35. Payless immediately wrote to its bank attempting to recall the payments and recover the funds.

36. The bank informed Payless that the bank was unable to recall or recover any of the wire transfers.

37. Payless also informed the FBI, which initiated an investigation.

38. Payless also took action to secure its systems by retaining a third party, Mandiant Solutions, to conduct a forensic investigation of the incident and determine additional measures designed to prevent future incidents of this kind.

39. To date, Payless has been unable to recover any portion of the $1,268,750.00 in transfers initiated as a result of the fraudulent instructions provided by the third parties.

40. Payless timely notified Beazley of its loss under the Policy.

41. Payless has suffered a loss due to Payless' transfer, payment, and delivery of "**Money**" as a direct result of "**Fraudulent Instructions**" provided by a person purporting to be a "**Vendor**" or an "**Authorized Employee**" as those terms are defined by the Policy.

42. Payless has also suffered a loss resulting directly from "**Computer Fraud**" committed solely by a "**Third Party**" under the Policy's Computer Fraud Coverage.

43. Payless has also suffered a loss resulting directly from "**Forgery**" or alteration by a "**Third Party**" of orders or directions to pay a sum certain in **Money** that were or purportedly were made or drawn by Payless and/or one acting as Payless' agent under the Policy's Forgery and Alteration Coverage.

44. In addition to the $1,268,750 loss described above, Payless has incurred and will continue to incur covered "**Expenses**," defined to mean expenses incurred to "establish the existence and amount of a covered loss in excess of the Deductible," as a result of the loss and Beazley's failure to pay, as well as other damages, attorneys' fees, costs, and interest.

45. The loss and damages Payless seeks to recover from Beazley are covered under the Beazley Policy and no exclusions or other limitations apply to defeat or limit coverage.

46. Two years have passed since Beazley received notice of Payless' claim and, despite multiple requests by Payless, Beazley has without just cause or excuse failed to pay the amount due and owing Payless under its Policy.

47. Beazley's refusal to pay is based on alleged application misrepresentations made by Payless, through its Risk Insurance Manager, in Topeka Kansas.

48. Beazley's refusal to pay the full amount of Payless' loss is without just cause or excuse.

## **GENERAL ALLEGATIONS**

49. Prior to bringing this action, Payless performed or otherwise satisfied all conditions precedent to this action and coverage under the Policy. Alternatively, Payless has been excused from performance of conditions precedent by Beazley's acts, representations, conduct and/or omissions.

50. Payless has engaged the undersigned firm to represent it in this action, and has

agreed to pay a reasonable fee for services rendered.

51. Pursuant to Kansas choice of law principles, Kansas law applies to this dispute.

## COUNT I—BREACH OF CONTRACT

52. Payless re-allege Paragraphs 1 through 51 herein.

53. The Policy constitutes a valid, binding, and enforceable contract between Payless and Beazley.

54. The Policy was issued to Payless in Topeka, Kansas and was in full force and effect at all relevant times.

55. The Policy obligates Beazley to indemnify Payless for the covered losses described herein.

56. Despite multiple requests by Payless, Beazley has failed to pay the amount due and owing Payless as a result of the losses described herein.

57. By failing to pay the full amount owed to Payless under the Policy for the losses described herein, Beazley is in breach of its Policy.

58. As a result of Beazley's breach, Payless has sustained substantial damages and will continue to sustain substantial damages, including but not limited to the deprivation of the owed insurance proceeds, expenses associated with the investigation of the Loss and to establish the existence and amount of covered loss under the Policy, interest, attorneys' fees and costs associated with this action.

**WHEREFORE**, Payless respectfully requests that this Court enter judgment in its favor holding Beazley in breach of its contract of insurance with Payless and awarding Payless the full extent of its damages sustained as a result of Beazley's breach in an amount to be proven on summary judgment or at trial, including, but not limited to the full amount of Payless' $1,268,750.00 Loss, resulting expenses, pre- and post-judgment interest, attorneys' fees and costs

under Section 40-256 of the Kansas Statutes and/or other applicable laws, and any other relief the Court deems just, equitable, and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

## DESIGNATION OF PLACE FOR TRIAL

Plaintiff designates Topeka, Kansas as the place for trial.

DATED this the 19 day of May, 2021.

Respectfully submitted,

By: *Kevin W. Prewitt*
Clark H. Cole #78821
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
314.621.5070
314.621.5065 (facsimile)
ccole@atllp.com

Kevin W. Prewitt #26209
ARMSTRONG TEASDALE LLP
2345 Grand Boulevard, Suite 1500
Kansas City, Missouri 64108-2617
816.221.3420
816.221.0786 (facsimile)
kprewitt@atllp.com

- and -

**Christopher T. Kuleba**
Florida Bar No. 105302
ckuleba@reedsmith.com
*Pro Hac Vice Application To Be Filed*
**Garrett Nemeroff**
Florida Bar No. 111675
gnemeroff@reedsmith.com
*Pro Hac Vice Application To Be Filed*

REED SMITH, LLP
1001 Brickell Bay Drive, 9th Floor
Miami, FL 33131
Tel: 786-747-0200
Fax: 786-747-0299
*Counsel for Plaintiff*